IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ICE TEE HUDSON, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 7:23cv00137 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| J.C. STREEVAL, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Respondent. ) | |

Petitioner Ice Tee Hudson, a federal inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his federal sentence. Specifically, Hudson claims that the Bureau of Prisons ("BOP") failed to apply time credits to his sentence, in violation of the First Step Act, 18 U.S.C. 3632 ("FSA"). Respondent Warden J.C. Streeval has moved for summary judgment and this matter is ripe for disposition. Having reviewed the record, the court will grant respondent's motion.

I.

Hudson is serving a 108-month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), imposed by the United States District Court for the Western District of North Carolina on December 17, 2015.[1] *United States v. Hudson*, 3:15cr00094 (W.D.N.C. Dec. 17, 2015). Hudson is currently incarcerated at the United States Penitentiary in Lee County, Virginia ("USP Lee").

---

[1] The court originally sentenced Hudson to 188 months of incarceration, but the sentence was later reduced to 108 months by an amended judgment entered July 18, 2019. *United States v. Hudson*, 3:15cr00094, ECF No. 54 (W.D.N.C. Jul. 18, 2019).

Hudson filed a habeas petition under § 2241, arguing that he is entitled to more than 365 days of time credit under the FSA, which the BOP refused to apply to his sentence. Hudson contends that, since the enactment of the FSA, he has "participated in programing designed to reduce the risk of recidivism." (Pet. at 7 [ECF No. 1].) Hudson argues that the FSA "requires" the BOP to "give inmates time credits for participating in productive programs."[2] (*Id.*)

The respondent has moved for summary judgment, arguing that Hudson failed to exhaust available administrative remedies before filing his § 2241 petition and that, regardless of exhaustion, Hudson is not entitled to application of the time credits because he is assessed as a high risk for recidivism.

## II.

Respondent argues that Hudson failed to exhaust his available administrative remedies before filing his § 2241 petition. Although § 2241 does not contain a statutory exhaustion requirement, courts require prisoners to exhaust administrative remedies prior to seeking habeas review. *See McClung v. Shearin*, 90 F. App'x 444 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *United States v. Odiana*, 7 F.3d 227 (4th Cir. 1993); *Woods v. Warden*, No. 7:17cv358, 2019 WL 489135, at *2 (W.D. Va. Feb. 7, 2019).

The BOP has established a multi-tier system providing a federal prisoner the opportunity to seek formal review of any aspect of his confinement. *See* 28 C.F.R. §§ 542.10–

---

[2] Hudson has also filed a motion to amend his petition to add additional arguments in support of his claim. (ECF No. 16.) Inasmuch as the court has reviewed the submission and considered it, the court will grant Hudson's motion.

542.19. Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint to staff (a "BP-8"). *Id.* § 542.13(a). If informal resolution is unsuccessful, the inmate may then seek relief from the warden at the institution through the submission of a Request for Administrative Remedy (a "BP-9"). *Id.* § 542.14. The deadline for completion of the BP-8 and submission of the BP-9 is 20 days from the date of the event that is the subject of the remedy. *Id.* If an inmate is dissatisfied with the warden's response, he has 20 days from the date of the response to the BP-9 to file a Regional Administrative Remedy Appeal (a "BP-10") with the Regional Director. *Id.* § 542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then file a Central Office Administrative Remedy Appeal (a "BP-11") with the BOP's Central Office. *Id.* An inmate's appeal to the Central Office is the final administrative remedy level of appeal in the BOP. *Id.* § 542.14(b). No administrative remedy appeal is considered to have been fully exhausted until it is decided on its merits by the BOP's Central Office. *Id.* §§ 542.10–542.19.

Hudson's administrative remedy history reveals he filed a BP-9 concerning his concerns about FTCs on March 6, 2023, the same day that he submitted his § 2241 petition.[3] (ECF No. 13-1 at 1.) After filing his § 2241 habeas petition, Hudson appealed all levels of the administrative remedies. Hudson received a response to his BP-9 on March 9, 2023 (ECF No. 10-2 at 2), filed a BP-10 on March 20, 2023 (ECF No. 13-1 at 2), received a response to the BP-10 on May 12, 2023 (ECF No. 10-2 at 2), filed a BP-11 on June 1, 2023 (ECF No. 13-1 at 4), and received a response to the BP-11 on June 14, 2023 (ECF No. 17-1 at 4), approximately 100 days after filing his § 2241 habeas petition. Although Hudson has now exhausted his

---

[3] The parties do not dispute that Hudson filed a BP-8 before pursuing a BP-9.

administrative remedies, it is undisputed that he did not do so *prior* to filing this action, as is required.

### III.

But even if Hudson's administrative remedies were exhausted before filing this habeas petition, the petition nevertheless fails because Hudson is not eligible for *application* of the federal time credits ("FTCs")[4] to his sentence.

The FSA provides eligible inmates the opportunity to earn FTCs for participating in evidence-based recidivism reduction programming ("EBRR programs")[5] and productive activities ("PAs")[6]. 18 U.S.C. § 3632(d)(4)(A). The FTCs can be applied toward earlier placement in prerelease custody or supervised release. *Id.* § 3632(d)(4)(C). FTCs may not be earned for any EBRR programs that an inmate completed prior to the subchapter's enactment date or during official detention prior to the date the inmate's sentence commenced under 18 U.S.C. § 3585. *Id.* § 3632(d)(4)(B). An inmate is not eligible to earn FTCs if he is serving a sentence for a conviction under one of the several provisions of law set forth in 18 U.S.C.

---

[4] These time credits are also known as earned time credits ("ETCs"), and the terms are sometimes used interchangeably.

[5] The term "evidence-based recidivism reduction program" means either a group or individual activity that

  (A) has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;
  (B) is designed to help prisoners succeed in their communities upon release from prison; . . . .

18 U.S.C. § 3635(3); *see also* 28 C.F.R. § 523.41(a) ("An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving . . . [certain] types of activities[.]").

[6] "A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating." 28 C.F.R. § 523.41(b).

§ 3632(d)(4)(D). Eligible inmates can earn "10 days of time credits for every 30 days of successful participation" in approved programming. *Id.* § 3632(d)(4)(A)(i). Further, a prisoner may earn "an additional 5 days of time credits for every 30 days of successful participation in" EBRRs or PAs if the prisoner is determined by the BOP to be at a "minimum or low risk for recidivating, and who, over 2 consecutive assessments, has not increased their risk of recidivism." *Id.* § 3632(d)(4)(A)(ii).

At the time of its passage, the FSA required the Attorney General to develop a "risk and needs assessment system" to be used by the BOP to: determine the recidivism risk of all federal prisoners; classify prisoners as being at a minimum, low, medium, or high risk of recidivism; place prisoners in appropriate programs and productive activities based on those assessed needs; and "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *Id.* § 3632(a)(1), (3), and (4).

In compliance with the FSA's mandate, the BOP created and published a risk-assessment tool, "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN"). *See* BOP Program Statement 5410.01: First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), Nov. 18, 2022, at § 5.[7] Each inmate's PATTERN score is periodically determined by assigning point values to factors such as: current age; severity of the current offense(s); sex offender status; prison rule infractions or incidents, considering both their seriousness and timing; participation in drug treatment,

---

[7] The program statement is available at: www.bop.gov/policy/progstat/5410.01_cn2.pdf (last visited Jan. 29, 2024).

work, and education programming; history of violence; and history of escape. 18 U.S.C. § 3632(a). In addition, the BOP modified its existing needs-assessment system with the goal of improving efforts to identify inmate's needs which, if addressed, may reduce their recidivism risk. Accordingly, BOP Program Statement 5400.01: First Step Act Needs Assessment, dated June 25, 2021, instructs that the updated Risk and Needs Assessment System ("RNAS") is comprised of two components: PATTERN, the assessment tool which identifies and measures the risk of recidivism; and the Needs Assessment, which assesses the dynamic needs that may reduce recidivism.[8]

While eligible inmates with all PATTERN risk scores may earn FTCs, only those inmates with minimum and low PATTERN scores are able to have the FTCs *applied* to their sentences. *See* 28 C.F.R. § 523.42 (outlining the earning of FTCs); 8 C.F.R. § 523.44 (limiting application of FTCs to eligible inmates who have, in addition to satisfying other criteria, "a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment"). The application of time credits to prerelease custody or supervised release is governed by 18 U.S.C. § 3624(g).[9] A prisoner may be eligible under 18

---

[8] The program statement is available at: https://www.bop.gov/policy/progstat/5400.01.pdf (last visited Jan. 29, 2024).

[9] Section 3624(g)(1) sets forth the criteria for eligibility:

> (1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
> (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

U.S.C. § 3632(d) to earn and receive time credits but not be eligible to have those credits applied under 18 U.S.C. § 3624(g).[10]

Hudson's Inmate Profile reflects he is eligible to earn FTCs, but he is not eligible to have those FTCs applied to his sentence—at least not at this time. (ECF No. 10-4.) Hudson's latest risk assessment in the record was conducted on January 12, 2023, and based on that assessment, Hudson is assigned a high-risk recidivism level.[11] (*Id.* at 2.) Therefore, under 28 C.F.R. § 523.44(c)(1) and (d)(1), although Hudson has earned FTCs, they cannot presently be applied to his sentence due to his recidivism level. *See Thomas v. Williams*, No. 21cv00194-NJR,

---

(D)     (i) in the case of a prisoner being placed in prerelease custody, the prisoner—
         (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
         (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—
             (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
             (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
             (cc) the prisoner is unlikely to recidivate; or
(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

[10] As one court noted, "[w]hile this labyrinthine interaction between eligibility to earn and receive credits and eligibility to apply those same credits is no doubt frustrating to prisoners trying to navigate the system, there is not a contradiction between these sections as petitioner suggests." *Nevel v. Brown*, No. 5:23cv285, 2023 WL 8505881, at *6 (N.D. W. Va. Oct. 27, 2023) "[T]he FSA expressly provides that while an inmate who has a PATTERN score of medium or high risk of recidivism is eligible to complete EBRR programs and PAs, the successfully completed programs and PAs are not applied towards the inmate's time credits until she has received a minimum or low risk PATTERN score for two consecutive assessments for prerelease custody and a minimum or low risk PATTERN score for the last reassessment for supervised released." *Id.* citing *Brown v. Garrett*, No. 7:22cv00551-AMM-JHE, 2022 WL 18161601, at *3 (N.D. Ala. Dec. 22, 2022), R. & R. adopted by 2023 WL 130519 (N.D. Ala. Jan. 9, 2023). In this case, in response to Hudson's BP-11, an administrator at the Central Office noted that as of May 28, 2023, Hudson has "earned 340 days of FTC toward early release and 0 days that may be applied towards community placement if [he] reduce[s his] risk level or [is] granted an exception. (ECF No. 17-1 at 4.)

[11] Hudson does not dispute that he is assessed as a high risk for recidivism. (*See* ECF No. 15 at 1.)

2022 WL 18027460, at *2 (S.D. Ill. Dec. 30, 2022) (finding petitioner ineligible for FSA time credits due to high risk recidivism assessment, but denying § 2241 petition for failure to exhaust); *Salomon v. Heckard*, No. 5:22cv00081, 2022 WL 2446286, at *5 (S.D.W. Va. June 6, 2022) (denying § 2241 because petitioner ineligible for FSA time credits due to high risk recidivism assessment); *Jones v. Young*, No. 5:21cv00552, 2022 WL 2446271, at *6 (S.D.W. Va. May 5, 2022) (same), R. & R. adopted by 2022 WL 2442113 (S.D.W. Va. July 5, 2022). His petition must be denied.

## IV.

For the reasons stated, the court will grant respondent's motion for summary judgment and deny Hudson's habeas petition.[12]

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th of January, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[12] For the same reasons, the court will deny Hudson's motion for declaratory judgment (ECF No. 18).